# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

FLORIDA RSA #8, LLC d/b/a )
U.S. CELLULAR, )
a Delaware limited liability company, )
                                    )
        Plaintiff, )
                                   )
    vs. )         **Case No. 4:05CV1964MLM**
                                   )
CITY OF CHESTERFIELD, MISSOURI, )
a Missouri political subdivision, )
                                    )
        Defendant. )

## <u>MEMORANDUM OPINION</u>

This matter is before the court pursuant to the Motion for Partial Summary Judgment filed by Plaintiff Florida RSA #8, LLC, d/b/a U.S. Cellular, a Delaware limited liability company ("U.S. Cellular" or "Plaintiff"). Doc. 6. Defendant City of Chesterfield, Missouri, ("the City" or "Defendant") has filed a Response. Doc. 15. Plaintiff has filed a Reply. Doc. 20. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 13.

## UNDISPUTED FACTS[1]

U.S. Cellular is a wireless telecommunications services provider which holds a Federal Communications Commission ("FCC") license to provide wireless telecommunications services within certain market areas. U.S. Cellular locates potential telecommunications facility sites based on the service coverage plans prepared by its radio frequency engineers, in accordance with overall network plans designed to meet the service provision needs of particular markets. A site is suitable only if it

---

[1]        The facts are undisputed unless otherwise stated.

is high enough and close enough to the adjacent sites required for the system so that antenna signals are transmitted with strength and clarity over varying terrain, but spaced far enough away from adjacent sites to minimize interference between the sites. In addition to the technical factors for site selection, suitable site location depends on finding a landowner willing to sell his property or give a long-term lease for placement of the telecommunications facility.

Section 1003.050 of the City's Appendix of Zoning Ordinances (the "Zoning Code") provides that, "[t]he use and development of land and structures within any zoning district are limited to those uses and developments set forth in those sections of this Appendix applicable to such district." Doc. 15, Ex. A, Ex. 6. The Zoning Code, § 1003.140.2, states that a "'PC' Planned Commercial District encompasses areas where a variety of commercial developments and uses may be permitted. It is the purpose of these regulations to facilitate the establishment of commercial developments and uses in locations appropriate under approved site development plans and conditions." Section 1003.140.4(2) further states that "[p]ermitted land uses and developments shall be established in the conditions of the ordinance governing the particular Planned Commercial District."[2] This section then proceeds to specify uses which are representative of permitted uses in Planned Commercial Districts; representative examples include amusement parks, animal hospitals, apartment dwellings, arenas, storage areas, auditoriums, barber shops, bookstores, broadcasting studios, "transmitting, or relay towers and associated facilities for radio, television, and other communications," and hotels and motels. In regard to local public utility facilities, this provision states that "[a]ll plans for screening these facilities shall be submitted to the Department of Planning for review. No building permit or

---

[2]    Both parties have submitted § 1003.140 as exhibits. As such, this provision is referenced as both Doc. 15, Ex. A, Ex. 7, and Doc. 20, Ex. 15.

installation permit shall be issued until these plans have been approved by the Department of Planning." 1003.140.4(2)(a)-(eee).

The City's Ordinance 1214, passed December 2, 1996, is a zoning ordinance which states that its purpose is to regulate the placement of communications antennae and support structures within the City's limits and to establish procedures and criteria for obtaining a permit for antennae and support structures. Doc. 6, Ex. 5. Ordinance 1214 further states as the Ordinance's Policy Statement that:

> City of Chesterfield recognizes that the legal implications of the Federal Telecommunications Act of 1996 and the power that has been retained by said Act for municipalities relating to land use issues and the telecommunications industry.
>
> Accordingly, the City has taken into consideration the unique and diverse landscape found within this community and states that the landscape within the community is one of its most valuable assets. Protecting these valuable assets will require that the location and design of low power mobile radio service telecommunications facilities be sensitive to the setting in which they are placed.
>
> Community and neighborhood visual concerns should be considered paramount in the consideration of and selection of sites. Visual concerns should include both those found on and off site and these concerns should be evaluated by a consideration of all the policies as set forth in this Ordinance. These policies, therefore, are incorporated into the Ordinance relating to the visual impact and screening criteria applicable to low power mobile radio service telecommunications facilities.

Doc. 6, Ex. 5.

Section 1003.167.19 of the City's Zoning Code, which Code provision Ordinance 1214 amended, addresses communication facilities and systems and sets forth the purposes of Ordinance 1214 as follows in § 1003.167.19(1)(a)-(e):[3]

---

[3] Both parties have submitted exhibits which include § 1003.167.19. As such, this document is referenced at both Doc. 15, Ex. A, Ex.3, and Doc. 6, Ex. 5.

(a) Provide for the appropriate location and development of communications facilities and systems to serve the citizens and businesses of the City of Chesterfield;

(b) To encourage the location of antenna atop existing structures or buildings;

(c) Minimize adverse visual impacts of communications antennae and support structures through careful design siting, landscape screening and innovative camouflaging techniques;

(d) Maximize the use of existing and new support structures so as to minimize the need to construct new or additional facilities;

(e) Maximize and encourage the use of disguised antenna support structures as to ensure the architectural integrity of designated areas within the City and the scenic quality of protected natural habitats.

Section 1003.167.19(2)(a) of the City's Zoning Code defines antenna, in relevant part, as follows: "Any device that transmits and/or receives electromagnetic signals for voice, data or video communications purposes including, but not limited to, ... cellular telephone and similar forms of communications. The term shall exclude satellite earth station antennae less than two (2) meters in diameter used only for home television reception." Section 1003.167.19(2)(b) defines antenna support structure, in relevant part, as follows: "Any structure designed and constructed for the support of antennas, including any tower or disguised support structure ... .The term antenna support structure shall also include any related and necessary cabinet or shelter."

Section 1003.167.19(3) states that the requirements set forth in this section are applicable to all antennae support structures "built or modified after the effective date of this Ordinance and owned by a private entity or agency of local government." " Section 1003.167.19(3)(a) states that "[a]ntenna shall be permitted use in all zoning districts" and further states that: "In a 'C-8' Planned Commercial District, 'M-3' Planned Industrial District, or 'MXD' Mixed Use Development District any antennae support structure may be included as a permitted use in the conditions of the governing ordinance. Such governing ordinance must, at a minimum, comply with all of the conditions of this

Ordinance." The districts specified in §1003.167.19(3)(a) do not include a "PC" Planned Commercial District.[4]

Section 1003.167.19(4)(a)-(h) provides, in relevant part, as follows:

(4)  Permitted Use.  After any Administrative/Zoning Approval required by Section (5) herein, and upon receipt of the appropriate building permit, the following are allowed:

(a)   The attachment of additional or replacement antennae ... .

(b)   Antennae which are in accordance with an approved design contained on schedule prepared and maintained by the Director of Planning or of such other design as is otherwise maximally disguised ... .

(c)   If the permit is to modify an existing permitted use antenna support structure, ... .

(d)   The mounting of antennae in or on any existing building or structure ... provided that the presence of the antennae are concealed by architectural elements or camouflaged by painting.

(e)  The installation of antennae on buildings or the construction of an antenna support structure on land owned by the City  ...

(f) The installation of antennae on buildings or the construction of an antenna support structure of less than one hundred and twenty (120) feet in height on land owned by the State of Missouri or any agency of the federal government or any local government entity.

... .

Section 1003.167.19(5) states that prior to the issuance of a Building Permit for a communications facility, an Administrative Zoning Approval shall be obtained from the Director.

---

[4]      A "C-8" Planned Commercial District differs from a " PC" Planned Commercial District, as the former is established in § 1003.145 of the City's Zoning Code and the latter is established in § 1003.140.  Doc. 20, Ex. 14.

Section 1003.167.19(5)(a)(1)-(6)[5] sets forth the designated antennae and support structures with §1003.167.19(5)(a)(3) specifically granting the City's Director of Planning authority to issue an Administrative Zoning Approval for a "disguised antenna support structure" in certain zoning districts; the districts specified in the ordinance do not include a "PC" Planned Commercial District. Section 1003.167.19(5)(a)(4) grants the City's Director of Planning authority to issue an Administrative Zoning Approval for the installation of antennae on buildings and disguised support structures on land owned by the State or a political subdivision.

Section 1003.167.19(6) states that, "[a]ll proposals to install, build, or modify an antenna or support structure not covered under Section (4) or (5) above shall require the applicant to affirmatively show the reasons why the antenna support structure cannot be located in an area

---

[5]     Section 1003.167.19(5)(a) provides, in relevant part, as follows:
(5)  Administrative permit/zoning approval.  Prior to the issuance of a Building Permit, an Administrative Zoning Approval issued by the Director shall be obtained and shall allow the following:

(a) Approvals:

> (1)  The attachment of additional or replacement antennae or shelters to any antenna support structure existing on the effective date of this Ordinance or subsequently approved in accordance with these regulations and which requires enlargement of the existing antenna support structure ...

> (2)  The one-time replacement of any antenna support structure ... .

> (3)  The construction of a disguised antenna support structure [in designated districts which do not include Planned Commercial districts] ... .

> (4) The Installation of antennae on buildings or the construction of a tower or Disguised Support Structure on land owned by state or federal government or any local political subdivision. Such Antenna support structures shall not exceed one hundred and twenty (120) feet in height.

covered in these sections" and that the applicant "shall require a Conditional Use Permit." Section 1003.167.19(6)(a) and (b) specify that such an application must be made to the City's Zoning Commission and that the decision of the Zoning Commission to deny the application for a Conditional Use Permit must be based on "substantial evidence" that the application does not meet the criteria set forth in §1003.167(6)(b)(1)-(6).

Section 2-219 addresses the powers of the City's Board of Adjustment (the "Board") and includes the Board's authority "[t]o hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by an administrative official in the enforcement of these actions or of any ordinance adopted pursuant thereto." Doc. 6, Ex. 8.

Drury Chesterfield, Inc. ("Drury") is the owner of a parcel of land located at 355 E. Chesterfield Parkway, Chesterfield, Missouri (the "Property"). On May 16, 2005, the City adopted Ordinance 2173 which is the governing ordinance for a new development by Drury. The Ordinance states that it is an ordinance repealing Ordinance 1899 and replacing it with a new ordinance amending the number of seats allowed in "the restaurant ...;. decreasing the setback ...; amending the parking reduction ...; for Drury Plaza Hotel a 'PC' Planned Commercial District located adjacent to Chesterfield Mall."[6] Ordinance 2173 states that the uses shall be limited to the following structures:

1. One 11-story hotel with 289 rooms
2. One 9-story hotel with 140 rooms
3. One Two-level parking garage
4. One ancillary Conference Center
5. One restaurant

---

[6]     Both parties have submitted exhibits which include Ordinance 2173. As such, this document is referenced at both Doc. 15, Ex. A, Ex.1 , and Doc. 6, Ex. 3. Ordinance 2173 states that "Drury Development Corporation had requested a change in zoning from three 'C-8' Planned Commercial Districts and an 'NU' Non-Urban District to a 'PC' Planned Commercial District."

The Ordinance provides that the Property is zoned as a "PC" Planned Commercial District. Ordinance 2173 further specifies "permitted uses" which include work and storage areas, hotels and motels, parking areas, restaurants, and permitted signs. The Ordinance further specifies "ancillary uses" which include facilities for public assembly, automatic vending facilities, barber shops and beauty parlors, bookstores, recreational facilities, and "stores, shops, markets, service facilities, and automatic vending facilities in which goods or services of any kind are being offered for sale or hire to the general public on the premises." Doc. 16, Ex. A, Attach. 1. Ordinance 2173 also states that the ancillary uses "are permitted only within the building containing the principal permitted uses" and that the "primary purpose of these ancillary uses is to serve the occupants and patrons of the principal permitted uses within the buildings." Doc. 16, Ex. A, Attach. 1.

U.S. Cellular entered into a lease(the"Lease") with Drury which lease is dated July 5, 2005, whereby U.S. Cellular was to place a wireless telecommunications antenna (the "Antenna") on the rooftop of the Drury Inn. On or around August 5, 2005, U.S. Cellular filed an Application for Administrative Approval of the Placement of Communications Antennae and Support Structures for the purpose of receiving the City's approval for U.S. Cellular's installation of its Antenna on the Drury Inn rooftop. U.S. Cellular checked the box on the City's form which applies to the "[i]nstallation of antennae on buildings or the construction of a tower/Disguised Support structure on land owned by state or federal government or local political subdivision." Doc. 6, Ex. 6. The Application further specified that U.S. Cellular was applying to place a "rooftop antenna at Drury Plaza." Doc. 6, Ex. 6.

In a letter dated August 12, 2005, Annissa G. McCaskill-Clay, Assistant Director of Planning for the City, stated that the City had rejected the application for placement of a rooftop antenna by U.S. Cellular. [7] The letter further stated:

> Placement of telecommunications equipment is regulated by City of Chesterfield Ordinance 1214. Said ordinance requires that antennae support structures must be included as a permitted use in Planned Districts and that all the conditions of Ordinance 1214 must be met. Drury Plaza is governed by City of Chesterfield Ordinance 2173, which provides all permitted and ancillary uses. Telecommunications equipment is not permitted in the established "PC" District. In order for the proposed equipment to be placed in the proposed location, the governing ordinance must be amended.

On or around September 16, 2005, U.S. Cellular filed an Appeal of the Administrative Determination with the City's Department of Planning alleging that Department of Planning erred in denying U.S. Cellular's Application. Doc. 6, Ex. 9. In this Appeal, U.S. Cellular stated that Ordinance 1214 should supercede Ordinance 2173 as the former "was designed to regulate the placement of telecommunications equipment. Antennas should be a permitted use." By letter dated September 26, 2005, Ms. McCaskill-Clay notified U.S. Cellular that the City's Board of Adjustment had received the application of the for the antenna at issue. Ms. McCaskill-Clay reiterated what she had stated in her letter of August 12, 2005, as quoted above.[8] She further stated that: "The Department of Planning has discussed your application with [the City attorney] and he has agreed that the first appropriate step for placement of the antenna support structure at the Drury Inn is to amend the governing ordinance to add this use to the permitted uses for the site."

---

[7]    Both parties submitted the August 12, 2005 as an exhibit. As such, this letter is referenced at Doc. 6, Ex. 7 and Doc. 15, Ex. A, Ex.2.

[8]    Both parties submitted the September 26, 2005 letter as an exhibit. As such, this document is referenced at Doc. 6, Ex. 10, and Ex. 15, Ex. 4.

In Count I of its Complaint, U.S. Cellular alleges that by denying its Application for the Antenna on the rooftop at Drury Plaza the City violated the Telecommunications Act, 47 U.S.C. §332(c)(7)(B)(iii), which statute provides that: "The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof...(1) shall not unreasonably discriminate among providers of functionally equivalent services." In Count I, U.S. Cellular asks that the court direct the City to approve U.S. Cellular's Application and to order further relief as the court deems just and proper. In its Motion for Partial Summary Judgment U.S. Cellular contends that the City's decision to deny the Application and Appeal is not supported by substantial evidence as required by § 332 and asks the court to grant the relief which it seeks in Count I and to issue an injunction directing the City to issue approval of the Application. U.S. Cellular further contends that the City's Director of Planning does have the authority to grant Administrative Zoning Approval in Planned Commercial Districts for antennae. In support of its position, U.S. Cellular contends that its position is consistent with the purposes of § 1003.167.19 and contends that antennae are a permitted use in Planned Commercial Districts and that, as such, they need not be specified in the enabling ordinance. The City contends that its Zoning Code does not allow administrative approval of U.S. Cellular's Application and that, therefore, the enabling ordinance, Ordinance 2173 must be amended before the Application for the Antenna can be considered and subsequently approved by the City.

## STANDARD FOR SUMMARY JUDGMENT

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>see</u> <u>also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The

substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. See also Fenny v. Dakota, Minn. & E.R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003) (holding that an issue is genuine "if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party").

A moving party always bears the burden of informing the court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in its favor. Id. at 255; Raschick v. Prudent Supply, Inc., 830 F.2d 1497, 1499 (8th Cir. 1987). The court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. However, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." Id. at 252. With these principles in mind, the court turns to an analysis of Plaintiff's Motion for Summary Judgment.

## DISCUSSION

Missouri law provides that zoning ordinances are strictly construed against the zoning authority and in favor of the property owner. Cunningham v. Bd. of Alderman of the City of

*Overland*, 691 S.W.2d 464. 469 (Mo. Ct. App. 1985); *Fairmont Inv. Co. v. Woermann*, 210 S.W.2d 26, 29 (Mo. 1948).

Also, Missouri law provides that, upon construing a municipal ordinance a court should apply "the rules of interpretation applicable to legislative enactments." *Holman v. City of Macon*, 137 S.W. 16, 17 (Mo. Ct. App. 1911). "The ultimate goal in statutory construction is to ascertain and give effect to the legislative intent." *Collier v. Roth*, 468 S.W.2d 57, 59 (Mo. Ct. App. 1971) (citations omitted). "Doctrines and theories of statutory construction [are] employed as aids" where there are "incomprehensible conflicts." *Id.* Under such circumstances, a court should first "ascertain the nature of the particular statute." *Id.* Further, a court should consider "the reason for the statute's enactment." *Id.* at 61 (citations omitted). Thus, consideration of the public policy behind a statute is a relevant consideration when construing an ambiguous statute or ordinance. *Spradlin v. City of Fulton*, 982 S.W.2d 255, 262 (Mo. 1998) (en banc).

"Provisions of the entire legislative act must be construed together and, if reasonably possible, all provisions must be harmonized." *Lincoln County Stone Co. v. Koenig*, 21 S.W.3d 142, 146 (Mo. Ct. App.2000) (citing *State v. Sledd*, 949 S.W.2d 643, 646 (Mo. Ct. App.1997)). *See also Cousin's Advertising, Inc. v. Bd. of Zoning Adjustment of Kansas City*, 78 S.W.3d 774, 780 (Mo. Ct. App. 2002) ("Because a statute or ordinance is passed as a whole and not in parts or sections and is animated by one general purpose and intent, each part shall be construed in connection with other parts, and it is not proper to confine interpretation to the one section to be construed.") (citing *Martinez v. State*, 24 S.W.3d 10, 18 (Mo. Ct. App.2000)). Indeed, "[r]elated clauses are to be considered when construing a particular portion of a statute or ordinance." *Id.* As held in *Lincoln County*, "[a] statute must not be interpreted narrowly if such an interpretation would defeat the purpose of the statute" and "[i]t is presumed the legislature intended that every word, clause, sentence

and provision of a statute have effect; conversely, it will be presumed the legislature did not insert idle verbiage or superfluous language in a statute." 21 S.W.3d at 146 (citing <u>Hyde Park Housing Partnership v. Director of Revenue</u>, 850 S.W.2d 82, 84 (Mo.1993)). Additionally, where a statute's language is not clear from the statute itself, it should be construed with other statutes. <u>Vocational Servs. Inc. v. The Developmental Disabilities Res. Bd.</u>, 5 S.W.3d 625, 630 (Mo. Ct. App. 1999) "'[W]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words.'" <u>Id.</u> at 630-31(quoting <u>Alumax Foils, Inc. v. City of St. Louis</u>, 959 S.W.2d 836, 838 (Mo. Ct. App.1997). <u>See also</u> <u>State v. Wilson</u>, 55 S.W.3d 851, 854 (Mo. Ct. App. 2001) ("[W]hen the same subject matter is addressed in general terms in one statute and in specific terms in another, the more specific controls over the more general.") (citation omitted).

In <u>Sprint PCS Assets, LLC, v. City of La Canada Flintridge</u>, 2006 WL 91541, *3 (9th Cir., Jan. 17, 2006), [9] the Ninth Circuit recently held that upon denying a wireless telecommunication company's request for a permit to erect two antenna towers a city must satisfy the substantial evidence standard set forth in the Telecommunications Act, 47 U.S.C. § 332(c)(7)(B)(iii). The court further held:

> The Telecom Act requires that the City's permit denials be supported by substantial evidence. Specifically, 47 U.S.C. § 332(c)(7(B)(iii) states that "any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."

> The interpretation of "substantial evidence" in the context of the Telecom Act was the focus of extended analysis in <u>MetroPCS</u>, which held that "the substantial evidence inquiry does not require incorporation of the substantive federal standards imposed

---

[9]     The parties have not cited, nor has the court's research revealed, a case in which the Eighth Circuit has addressed the meaning of "substantial evidence" pursuant to 47 U.S.C. §332.

by the [Telecom Act]." 400 F.3d at 723. Rather, courts should consider whether the denial is based on "substantial evidence in the context of applicable state and local law." Id. at 724. Consequently, the Telecom Act " 'does not affect or encroach upon the substantive standards to be applied under established principles of state and local law.' " Id. (quoting Cellular Tel. Co. v. Town of Oyster Bay, 166 F.3d 490, 494 (2d Cir.1999); see also id. (concluding that the substantial evidence standard ))"does not create a substantive federal limitation upon local land use regulatory power")) (internal quotation omitted). MetroPCS accords with the decisions of other circuits in this respect. See id. at 723(noting that "there appears to be universal agreement among the circuits as to the substantive content of [the substantial evidence] requirement"); see, e.g., Preferred Sites, LLC v. Troup County, 296 F.3d 1210, 1219 (11th Cir.2002); Oyster Bay, 166 F.3d at 494.

The substantial evidence standard is "essentially 'deferential,' " and courts may not "'engage in [their] own fact-finding nor supplant [a city's] reasonable determinations.'" MetroPCS, 400 F.3d at 725(quoting Oyster Bay, 166 F.3d at 494) (first alteration in original). Substantial evidence implies "less than a preponderance, but more than a scintilla of evidence." MetroPCS, 400 F.3d at 725(internal quotation omitted).

Thus, to be valid, the grounds for denial must receive at least some weight under state law. If not, the denial is deemed "invalid even before the application of the [Telecom Act's] federal standards." MetroPCT, 400 F.3d at 724.

Id.

As stated in USOC of Greater Iowa, Inc., v. City of Bellevue, 279 F.Supp.2d 1080, 1085 (D. Neb. 2003), to determine under § 332 whether a decision is supported by substantial evidence a court will review the record as a whole for "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." In USOC the court held that where a city fails to give any reason at all for denying a request for placement of an antenna the threshold test of § 332 is not met. Id. at 1086. Likewise, in Nextel Communications of Mid-Atlantic, Inc., v. Town of Hanson, 311 F.Supp.2d 142, 164 (D. Mass. 2004), involving application of State building regulations to Nextel's application for a wireless telecommunications tower, the court held that the "amount of supporting evidence required [pursuant to § 332] is low; the state or local body's decision need only be 'supported by ... more than a scintilla of evidence.'" (internal quotations omitted). The court noted in Nextel that the municipal building code at issue was capable of conflicting interpretations and that the case presented

"a difficult question of regulatory construction." 311 F.Supp.2d at 167. The court further held, "[t]he question before [it], however, [was] not what the Building Code mean[t], but rather whether the State Board's decision was supported by substantial evidence. [The court] must uphold the State Board's interpretation if it 'pick[ed] between reasonable inferences from the record before it.'" Id. at 164 (quoting Nat'l Tower v. Plainville Zoning Bd., 297 F.3d 14, 23 (1st Cir. 2002)). Because the dispute in Nextel was "about whether a certain sentence in a complex regulatory code applie[d] to a particular structure, centering mainly on the definitions of various terms and the interrelations between various provisions," the court reviewed the defendant's decision "for the reasonableness of the regulatory interpretation." Id. at 167. In particular the court said that its review "tend[ed] more towards the nature of a review of an administrative agency's construction of an ambiguous statute according to principles of deference." Id. (citing Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-45 (1984) (other citation omitted).

Thus, in the matter under consideration § 332(c)(7)(B)(iii) of the Telecommunications Act is controlling regarding the City's denial of U.S. Cellular's application to place a wireless telecommunications antenna on the rooftop of the Drury Inn and, therefore, pursuant to U.S. Cellular's Motion for Partial Summary Judgment the court must determine whether the City's denial of U.S. Cellular's Application has at least some weight under the City's ordinances and/or State law.[10] To do so the court will apply Missouri rules of statutory construction.

In the matter under consideration provisions of the City's Zoning Code and Ordinances are in conflict regarding whether or not it is required for the enabling Ordinance for the "PC" Planned

---

[10]     U.S. Cellular alleges in its Complaint that § 332(c)(7(B)(iii) of the Telecommunications Act is applicable and the City's Ordinance, § 1003.167.19(6)(b), acknowledges that the City's decisions regarding Applications for antennae are subject to a substantial evidence standard.

Commercial District at issue, Ordinance 2173, to specifically include an antenna as a permitted use in order for an antenna to be placed on the rooftop of the Drury Inn. First, U.S. Cellular argues that § 1003.167.19(3), which states that antennae shall be a permitted use in all zoning districts, and §1003.167.19(5) establish the authority for the City's Director of Planning to approve the installation of the Antenna at issue on the rooftop of the Drury Inn. The City argues that because §1003.140.4(2) requires that permitted land uses must be included as a permitted use in an ordinance enabling a zoning district and because the Antenna is not included in Ordinance 2173 as a permitted use, under no circumstances can the Director issue an administrative approval of the Antenna. The City further argues that the Director cannot issue an administrative approval of the Antenna because the Antenna is not included in those circumstances designated by §1003.167.19(5)(a) and because, specifically, §1003.167.19(4)(a)(4) states that antennae can be approved by the Director only when they are on government owned land. Although U.S. Cellular agrees with the City to the extent that the Director generally does not have the authority to grant Administrative Zoning Approval for an antenna in a Planned Commercial District, U.S. Cellular contends that where antennae are a permitted use in such a district, the Director has the authority to grant Administrative Zoning Approval. See Doc. 20 at 3.

Section 1003.167.19(5) designates circumstances under which Administrative Zoning Approval is appropriate for placement of antennae and antenna support structures. U.S. Cellular argues that subsection (a)(4) of § 1003.167.19(5) addresses "antennae on buildings" separately from the construction of a tower or disguised support structure on government owned land. Such an interpretation is contrary to the plain meaning of §1003.167.19(5)(a)(4). U.S. Cellular would have the court interpret §1003.167.19(5)(a)(4) in a manner which would include a non existing comma between approval of "antennae on buildings" and "land owned by state or federal government."

16

Thus, U.S. Cellular's interpretation of subsection (a)(4), bestows upon the Director the authority to grant Administrative Zoning Approval of antennae such as the Antenna at issue. Certainly § 1003.167.19(5)(a)(4) must be read as a whole, not to mention in the context of the regulatory scheme. Lincoln County, 21 S.W.3d at 146. The court finds, therefore, that the plain and unambiguous language of §1003.167.19(5)(a)(4) is that this subsection applies to antennae on buildings which buildings are on government owned land; it does not apply generally to the installation of antennae on land or buildings which are not government owned. It is clear from the regulatory scheme of §1003.167.19 that the City did not intend to give the Director the broad authority which U.S. Cellular urges that §1003.167.19(5)(a)(4) provides. The court further finds that §1003.167.19(5)(a)(1)-(6), as set forth in detail above, delineate the circumstances under which the Director can issue a permit for an antenna and that these circumstances do not include a new antenna on private property; subsections (a)(1) and (2) provide for replacement or additional antennae; subsection (a)(3) addresses support structures, not antennae; subsection (a)(4) provides for new antennae on government property; subsection (a)(5) provides for antennae on utility poles; and subsection (a)(6) provides for antennae in Multi-Use Interest Areas. The court further finds that the plain and unambiguous language of §1003.167.19(5)(a)(1)-(6), as set forth above, is consistent with the City's interpretation. [11]

Clearly, according to the plan and unambiguous meaning of the applicable zoning provisions the Director does not have the authority to grant Administrative Zoning Approval for new antennae

---

[11]    In the event, pursuant to a request by Drury, the City amends Ordinance 2173 to include the Antenna as a permitted use, it is not clear to the court the procedure which Drury and/or U.S. Cellular must follow in order to facilitate the installation of the Antenna. Indeed, the City's form, Doc. 6, Ex. 6, does not provide for Administrative Approval for the placement of an antenna on a building located on private property. The court, however, need not determine the proper procedure.

in a "PC" Planned Commercial District which antenna is not included as a permitted use in the enabling ordinance. While § 1003.167.19(3)(a) states that antennae are permitted in all zoning districts, when considered in the context of the regulatory scheme applicable to communication facilities as well as § 1003.140.4(2), which requires that an enabling ordinance for a particular "PC" Planned Commercial District include a permitted use, it is clear that this latter provision trumps any ambiguities; thus, under any and all circumstances to be permitted within a particular "PC" Planned Commercial District, an antenna must be specifically included as a permitted use in the ordinance enabling such District. U.S. Cellular's position, by which the language of § 1003.167.19(3)(a) is considered out of context and by which it allegedly overrides §1003.140.4(2), negates the stated purpose of the regulatory scheme established by §1003.167.19 which is to provide for the appropriate location of communication facilities. Additionally, U.S. Cellular's position negates the purpose of § 1002.140 which is to facilitate commercial development under approved site development plans. Reading the City's Ordinances as a whole it is clear that §1003.167.19(3)(a) was not meant to abrogate the very purpose of § 1002.140.

As stated in Vocational Services, 5 S.W.3d at 630, where ambiguities arise, it is appropriate to construe ordinances together. Thus, while § 1003.167.19(3)(a) states that antennae are a permitted use in all zoning districts, the court finds, considering the City's ordinances a whole, that this subsection was not intended to negate the requirement that an enabling ordinance include antennae as a permitted use within the zoning district created by the enabling ordinance. What was intended by §1003.167.19(3)(a) is that after following appropriate procedure antennae can be included within a zoning district if such use is permitted within said district. Thus, proper procedure as established

by §1003.140.4(2) mandates that the Antenna at issue be included in the enabling ordinance, Ordinance 2173.[12]

As such, unless the antenna at issue is established as a permitted use pursuant to Ordinance 2173, which is the enabling ordinance for Drury Plaza, § 1003.140.4(2) requires that Ordinance 2173 be amended in order for the City to consider whether the Antenna can be placed on the rooftop of the Drury Inn. In compliance with § 1003.140.4(2), Ordinance 2173 sets forth the permitted uses for the parcel of land at issue; these permitted uses do not include an antenna or antennae.

As stated above, § 1003.140.4(2) identifies uses representative of those appropriate in a "PC" Planned Commercial district. Section 1003.140.4(2)(k) includes associated facilities for communications. To the extent that it can be argued that § 1003.140.4(2)(k) includes antennae as defined in §1003.167.19(2)(a) and that, as such, they are designated as a permitted use in a "PC" Planned Commercial District, the court finds that § 1003.140.4 (2) still requires that a specific permitted use must be set forth in the enabling ordinance for a particular "PC" Planned Commercial District. The court further notes that §1003.140.4(2), requiring that a permitted use within a "PC" Planned Commercial District be included in an enabling ordinance, is not altered by § 1003.140.4(2)(k); this latter provision is meant only to clarify that pursuant to proper inclusion in an enabling ordinance, devices to facilitate communication can be included in a "PC" Planned Commercial District. See Wilson, 55 S.W.3d at 854; Spradlin, 982 S.W.2d at 262. Thus, considering the City's regulatory scheme as a whole, it is clear that the City's Zoning Code and Ordinances require that Ordinance 2173 must include the Antenna as a permitted use in order for the City to

---

[12] Ordinance 2173 itself provides for a Site Development Plan and states that prior to the issuance of any building permit the builder shall submit such a plan. The Ordinance further provides for review by the City Council and for review by the Planning Commission. Doc. 16, Ex. 1 at 2, 7.

consider U.S. Cellular's Application for the Antenna on the rooftop of the Drury Inn. See Lincoln County, 21 S.W.2d at 144. Upon resolving conflicts in the relevant provisions of the City's Zoning Code and Ordinances, the court will also consider applicable public policy. See Spradlin, 982 S.W.2d at 262. The stated public policy behind the City's ordinances relevant to the creation of "PC" Planned Commercial Districts is to control commercial development. The manner by which this is to be accomplished is by the approval of such districts in appropriate locations pursuant to a site development plan. See § 1003.140.2. Additionally, the stated public policy behind § 1003.167.19 is to control the placement of antennae and support structure in an manner which minimizes adverse visual impact and maximizes use of existing structures so as to preserve "architectural integrity" and "scenic quality." If the City is to assure that the development of structures within a "PC" Planned Commercial District are appropriate, §1003.140.2, and if it is to assure that antennae are placed in locations which maintain architectural integrity and scenic quality, § 1003.169.19(1), it is not logical that the City intended that enabling ordinances which create "PC" Planned Commercial Districts would provide the developer the right to place antenna on structures not specifically included in the ordinances' permitted uses without prior approval from the City for placement of those antennae. Such a result would be inconsistent with the public policy behind ordinances addressing both the creation of "PC" Planned Commercial Districts and addressing communication facilities. See Spradlin, 982 S.W.2d at 262; Collier, 468 S.W.2d at 59.

Thus, to whatever extent that the regulatory scheme is subject to different interpretations in regard to whether an ordinance enabling a "PC" Planned Commercial District must specify antennae as a permitted use, the court finds based on the consideration of the statutory schemes as a whole and based on public policy, that the enabling ordinance must specify antennae as a permitted use. As such, in the matter under consideration, the Assistant Director correctly stated that the governing

ordinance, Ordinance 2173, must be amended in order for U.S. Cellular's antenna to be placed on the roof of the Drury Inn. The court further finds, for the reasons set forth above, that the Assistant Director's decision as stated in the letter of August 12, 2005 is supported by substantial evidence as required by § 332 of the Telecommunications Act.

In addition, in support of their respective positions the parties each cite the transcript of a hearing of the City's Planning and Zoning Committee which took place on October 24, 2002. Doc. 15, Ex. A, Ex 10. As a preliminary matter the court notes that Ordinance 1899, which is the ordinance amended by Ordinance 2173, was approved on November 4, 2002 and that Ordinance 2173 was adopted on May 16, 2005. As such, the transcript sections cited by both parties refers to Ordinance 1899 and does not address Ordinance 2173 which is the subject of the matter under consideration.

Present at the hearing of October 2002 were Committee Members Dan Hurt and Barry Streeter and Drury's representative, Larry Haskell. The transcript reflects that Mr. Streeter asked if the Ordinance to be adopted had any language about "putting antennas on top of [the] building." He further asked whether there were going to be a "plethora" of antennas on top of the building. Mr. Haskell replied that there were no provisions of which he was aware. Mr. Streeter further inquired as to whether there were plans "about antennas on the building" and Mr. Haskell responded that "there's no intent going in that we would put an antenna on there. Will we at any point? You go to our Creve Coeur site, there is an antenna on that - you will not see it, I don't think - but it is on that building. Certainly we're not talking about doing anything like what's on top of Doubletree." Mr. Hurt proceeded to suggest that "[w]hy don't you just write in here "No antennas on the roof." When Mr. Streeter inquired about his intent, Mr. Haskell proceeded to question whether it was "necessary to limit what we can do up there? ... So, we would prefer not to have a total restriction but prefer

to come back with an architectural review or something like that if we were ever going to do anything on the roof." Mr. Hurt responded, "[y]ou'd have to write it in there then and then come back and put one on there and present it to us first. If you want to do it that way." Mr. Streeter responded that he was "not that far. I really more [sic] was trying to get information."

In agreement with U.S. Cellular, the court finds that this portion of the transcript of the hearing can be interpreted to suggest that members of the City's Planning and Zoning Committee were of the opinion that there were no restrictions in Ordinance 2173 regarding antennae placement; that Mr. Hurt suggested that if Mr. Streeter thought there should be restrictions, he should insert such a restriction in the Ordinance; and that Mr. Streeter decided not to propose such a restriction as he was "not that far" and was "trying to get information." On the other hand, as suggested by the City, the responses of Mr. Haskell can be interpreted to suggest that he was of the opinion that any use for a cellular antenna would have to be addressed in the governing ordinance before it could be considered. Because the interpretations of the above quoted conversation provided by both parties to this matter can be sustained by the context of the conversation, the court finds that the conversation is not instructive as to whether the City and/or U.S. Cellular believed at the time that Ordinance 2173 was enacted that antennae were a permitted use for the development of Drury Plaza.

In support of its position the City has provided examples of what it contends are ordinances which specify antennae as permitted uses. Doc. 16, Ex. A, Ex. 8 and Ex. 9. Ordinance 2059 is for a "PI" Planned *Industrial* District and allows "local public utility facilities" as a permitted use. Ordinance 252 changes a "NU" Non-Urban district to a "C-8" Planned Commercial District; while Attachment A to Ordinance 252 states that "permitted uses in this 'C-8' District shall be limited to all Permitted uses in the 'C-2' Shopping District," with certain exceptions, Attachment A does not specifically include antennae or similar structures as a permitted use. As such, the court finds that

Ordinance 2059 and Ordinance 252 are not instructive upon this court's interpreting the City's Zoning Code provisions and Ordinances applicable to communications facilities in "PC" Planned Commercial Districts.

U.S. Cellular suggests that the City's Board of Adjustment erred in refusing to consider its appeal of the decision of the Assistant Director of Planning. The court notes that the plain and unequivocal language of § 2-216 provides that the City's Board of Adjustment has the power to consider appeals where there is an alleged error in a decision or determination made by an administrative official of the City in enforcement of the City's Ordinances. Its letter of September 26, 2005, however, does not state that the Board would not consider the appeal made by U.S. Cellular. Rather this letter states that the appeal was rejected; hence, it is reasonable to conclude that the Board considered and denied the appeal. As such, U.S. Cellular's contention that the Board did not consider its appeal is without merit. Moreover, to the extent that U.S. Cellular further argues that the Board's decision was not based on substantial evidence as required by § 332 of the Telecommunications Act, for the reasons fully set out above in regard to the decision of the Director, the court finds that the decision of the Board is supported by substantial evidence.

## CONCLUSION

The court finds, for reasons more fully set forth above, that the undisputed facts do not establish that the City's Department of Planning wrongfully denied the Application of U.S. Cellular for the installation of an antenna on the rooftop of the Drury Inn. The court also finds that the undisputed facts do not establish that the City's Board of Adjustment improperly denied the appeal filed by U.S. Cellular of the Department of Planning's decision. The court also finds, for the reasons more fully set forth above, because the antenna is not a permitted use pursuant to Ordinance 2173, that the decision of the Department of Planning and that of the City's Board of Adjustment are

supported by substantial evidence as required by 42 U.S.C. § 332(c)(7)(B)(iii). As such, U.S. Cellular is not entitled to the remedies for which it asks in Count I of its Complaint, including that the City be ordered to issue an approval of U.S. Cellular's Application. The court further finds that U.S. Cellular's Motion for Partial Summary Judgment should be denied.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion for Partial Summary Judgment filed by Plaintiff U.S. Cellular is **DENIED**. [Doc. 6]

/s/ Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 15th day of February, 2006.